1

2

3

4                        UNITED STATES DISTRICT COURT

5                      NORTHERN DISTRICT OF CALIFORNIA

6                             EUREKA DIVISION

7

8    TRAE B.,[1]                          Case No.  21-cv-09983-RMI

9              Plaintiff,
                                          **ORDER RE: CROSS-MOTIONS FOR**
10         v.                             **SUMMARY JUDGMENT**

11   COMMISSIONER OF SOCIAL               Re: Dkt. Nos. 19, 23
     SECURITY,
12
               Defendant.
13

14                               **INTRODUCTION**

15         Plaintiff seeks judicial review of an administrative law judge ("ALJ") decision denying his

16   application for disability employment benefits under Title II and Title XVI of the Social Security

17   Act. *See* Admin. Rec. ("AR") at 23-37.[2] In May of 2017, Plaintiff filed his application, alleging an

18   onset date of May 1, 2016. AR at 611-16. The claim was denied initially, and upon

19   reconsideration. *Id.* at 432-36, 445-51. Following an administrative hearing on January 13, 2020,

20   an ALJ entered an unfavorable decision on March 31, 2020, finding Plaintiff not disabled. *Id.* at

21   282-300, 409-19. In August of 2020, the Appeals Council granted Plaintiff's request for review

22   and remanded the case to an ALJ with various instructions. *Id.* at 426-39. A second administrative

23   hearing was held on February 9, 2021, after which the ALJ issued another unfavorable decision on

24   March 31, 2021. *Id.* at 23-37, 237-74. In July of 2021, the Appeals Council denied Plaintiff's

25

26   _____
     [1] Pursuant to the recommendation of the Committee on Court Administration and Case Management of the Judicial
     Conference of the United States, Plaintiff's name is partially redacted.
27
     [2] The Administrative Record ("AR"), which is independently paginated, has been filed in sixteen (16) attachments to
28   Docket Entry #16. *See* (dkts. 16-1 through 16-16).

United States District Court
Northern District of California

request for review. *Id.* at 10-13.[3] Following an extension by the Appeals Council (*see* (dkt. 16-3) at 1-2), Plaintiff sought review in this court (*see* Compl. (dkt. 1) at 1-2) and the instant case was initiated. Both Parties have consented to the jurisdiction of a magistrate judge (dkts. 8, 12), and both parties have moved for summary judgment (dkts. 19, 23). For the reasons stated below, Plaintiff's Motion for Summary Judgment is **DENIED**, and Defendant's Motion for Summary Judgment is **GRANTED**.

## LEGAL STANDARDS

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The phrase "substantial evidence" appears throughout administrative law and directs courts in their review of factual findings at the agency level. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1154 (quoting *Consol. Edison Co. v. NRLB*, 205 U.S. 197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## BACKGROUND

Because Plaintiff's claims implicate such significant portions of the record, the court discusses the overwhelming majority of the relevant evidence in its analysis. *See infra* pgs. 6-15. As such, the court will provide only a brief overview of the facts at this juncture.

---

[3] In light of the Appeals Council's denial, the ALJ's decision is the "final decision" of the Commissioner of Social Security—which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

United States District Court
Northern District of California

Plaintiff began experiencing symptoms related to gastrointestinal issues, anxiety, and depression at a relatively young age. *See, e.g.*, AR at 834, 845. These symptoms persisted over the course of the next several years, resulting in numerous emergency department visits and treatment with medical specialists. *See, e.g.*, *id.* at 814-1629. Plaintiff's complaints often centered around gastrointestinal distress, including serious abdominal pain and intractable vomiting. *See, e.g.*, *id.* at 905 (presenting to emergency department with "10/10" abdominal pain), 965 (presenting to emergency department with daily vomiting). Plaintiff also frequently complained of mental distress. *See e.g.*, *id.* at 880 (suicidal ideation and prior suicide attempts). In fact, Plaintiff's physical and mental conditions were often seen as interconnected by medical providers. *See e.g.*, *id.* at 1110 (notation by Thea Smith, RN that Dr. McCoy found Plaintiff's "uncontrolled anxiety" to "play[] a significant role" in his gastrointestinal problems). Plaintiff also has a "history of abusing" opiates and benzodiazepines (*see id.* at 915), as well as substantial marijuana use. *See id.* at 920 ("He does use weed 3-4g a day since he was 18 years old."). All of these issues are discussed in greater detail below.

As to the present case, Plaintiff raises two claims before this court. *See* Pl.'s Mot. (dkt. 19). The first claim asserts that the RFC assessed by the ALJ failed to follow the directive of the Appeals Council to account for limitations resulting from Plaintiff's gastrointestinal and mental health impairments.[4] *Id.* at 3. Plaintiff relies on the Appeals Council's instructions that, on remand, the ALJ must: address the effects of irritable bowel syndrome ("IBS") in the RFC and explain how the evidence supports each part of the RFC; include a discussion of the claimant's longitudinal record of treatment regarding his IBS and visceral hypersensitivity syndrome and include a narrative discussion describing how the evidence is supportive of the RFC; and, adequately explain the mental RFC. AR at 426-39. Plaintiff argues that although the ALJ included a narrative discussion of the medical evidence with respect to Plaintiff's gastrointestinal impairments, the ALJ's discussion ignores and/or mischaracterizes evidence favorable to Plaintiff. Pl.'s Mot. (dkt. 19) at 15 ("[I]t is evident that the ALJ ignored, or selectively cited, evidence to the

---

[4] As discussed *infra*, this first claim is essentially two: (1) that the ALJ failed to follow the remand instructions of the Appeals Council, and (2) that the RFC is unsupported by substantial evidence.

United States District Court
Northern District of California

1    disfavor of the Plaintiff . . . Plaintiff maintains that this cherry picking of evidence constitutes

2    reversible error."). As a result, Plaintiff contends that the ALJ was necessarily unable to follow the

3    directive of the Appeals Council to discuss how the evidence supports the RFC. *Id.* Finally,

4    Plaintiff contends that the ALJ failed to adequately explain the mental RFC, as required by the

5    Appeals Council. AR at 426-39. Plaintiff relies on the fact that the ALJ found the opinions of Dr.

6    Dennis and Dr. Colsky "partially persuasive," arguing that the RFC did not properly account for

7    the limitations contained in their opinions. Pl.'s Mot. (dkt. 19) at 17.

8    　　　　Plaintiff's second claim asserts that the ALJ improperly rejected Plaintiff's pain and

9    symptom testimony, such that the RFC did not sufficiently account for limitations reflecting the

10   nature and intensity of Plaintiff's symptoms. Essentially, Plaintiff argues that none of the reasons

11   provided by the ALJ for discounting Plaintiff's pain and symptoms testimony (discussed below)

12   are specific, clear, and convincing. *See Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).

13   　　　**THE FIVE-STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY**

14   　　　　A person filing a claim for social security disability benefits ("the claimant") must show

15   that he has the "inability to do any substantial gainful activity by reason of any medically

16   determinable impairment" which has lasted or is expected to last for twelve or more months. *See*

17   20 C.F.R §§ 416.920(a)(4)(ii), 416.909. The ALJ must consider all evidence in the claimant's case

18   record to determine disability (*see id.* at § 416.920(a)(3)) and must use a five-step sequential

19   evaluation process to determine whether the claimant is disabled. *Id.* at § 416.920; *see also id.* at §

20   404.1520. While the claimant bears the burden of proof at steps one through four (*see Ford v.*

21   *Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020)), "the ALJ has a special duty to fully and fairly develop

22   the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d

23   441, 443 (9th Cir. 1983). Here, the ALJ appropriately set forth the applicable law regarding the

24   required five-step sequential evaluation process. AR at 24-26.

25   　　　　At step one, the ALJ must determine if the claimant is presently engaged in "substantial

26   gainful activity" (20 C.F.R § 404.1520(a)(4)(i)), which is defined as work done for pay or profit

27   and involving significant mental or physical activities. *See Ford*, 950 F.3d at 1148. Here, the ALJ

28   determined that Plaintiff had not performed substantial gainful activity during the relevant period.

United States District Court
Northern District of California

4

1    AR at 26.

2         At step two, the ALJ decides whether the claimant's impairment (or combination of

3    impairments) is "severe" (*see* 20 C.F.R. § 404.1520(a)(4)(ii)), "meaning that it significantly limits

4    the claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148

5    (quoting 20 C.F.R. § 404.1522(a)). If no severe impairment is found, the claimant will not be

6    found to be disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined that Plaintiff had the

7    following severe impairments: irritable bowel syndrome ("IBS"), depression, anxiety, substance

8    use (marijuana, alcohol), visceral hypersensitivity syndrome, degenerative disc disease ("DDD"),

9    and erythrocytosis. AR at 26.

10        At step three, the ALJ is tasked with evaluating whether the claimant has an impairment or

11   combination of impairments that meet or equal an impairment in the "Listing of Impairments." *See*

12   20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1. The listings describe

13   impairments that are considered sufficiently severe so as to prevent any individual so afflicted

14   from performing any gainful activity. *Id.* at § 404.1525(a). Each impairment is described in terms

15   of "the objective medical and other findings needed to satisfy the criteria in that listing." *Id.* at §

16   404.1525(c)(3). In order for a claimant to show that his or her impairment matches a listing, it

17   must meet all of the specified medical criteria—an impairment that manifests only some of those

18   criteria, no matter how severely, does not "meet" that listing. *See Sullivan v. Zebley*, 493 U.S. 521,

19   530 (1990). If an impairment either meets the listed criteria, or if one or more impairments are

20   determined to be medically equivalent to the severity of that set of criteria, that person is

21   conclusively presumed to be disabled without a consideration of age, education, or work

22   experience. *See* 20 C.F.R. § 404.1520(d). Here, the ALJ determined that Plaintiff did not have an

23   impairment or combination of impairments that meets or equals the criteria or the severity of any

24   of the listings. AR at 26-28.

25        If a claimant does not meet or equal a listing, the ALJ must formulate the claimant's

26   residual functional capacity ("RFC"), which is defined as the most that a person can still do

27   despite the limitations associated with their impairment. *See* 20 C.F.R. § 404.1545(a)(1). Here, the

28   ALJ determined that Plaintiff retained the ability to perform work at the light exertional level,

United States District Court
Northern District of California

subject to the following limitations: cannot climb ladders, ropes, and scaffolds; can perform other postural maneuvers such as stooping, crouching on an occasional basis; must avoid concentrated exposure to hazards such as unprotected heights and moving machinery; limited to performing simple, routine tasks with only occasional interaction with coworkers and the public. AR at 28-29.

Following the formulation of the RFC, the ALJ must determine—at step four—whether the claimant is able to perform her past relevant work, which is defined as "work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *See* 20 C.F.R. § 404.1560(b)(1). If the ALJ determines, based on the RFC, that the claimant can perform her past relevant work, the claimant will not be found disabled. *Id.* at § 404.1520(f). Otherwise, at step five, the burden shifts to the agency to prove that the claimant can perform a significant number of jobs that are available in the national economy. *See Ford*, 950 F.3d at 1149. To meet this burden, the ALJ may rely on the Medical-Vocational Guidelines (commonly referred to as "the grids") (20 C.F.R. Pt. 404 Subpt. P, App. 2); or, alternatively, the ALJ may rely on the testimony of a vocational expert ("VE"). *Ford*, 950 F.3d at 1149 (citation omitted). A VE may offer expert opinion testimony in response to hypothetical questions about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy, or the demands of other jobs that may be available in the national economy. *See* 20 C.F.R. § 404.1560(b)(1). An ALJ may also use other resources for this purpose, such as the Dictionary of Occupational Titles ("DOT"). *Id.*

At step four, the ALJ determined that Plaintiff has no past relevant work. AR at 36. At step five—based on the VE's testimony—the ALJ determined that Plaintiff can perform the requirements of a sub-assembler, inspector, or cleaner. *Id.* Accordingly, the ALJ determined that Plaintiff had not been disabled at any time during the relevant period. *Id.* at 37.

## DISCUSSION

The ALJ in the present case did not err in determining that Plaintiff was not disabled during the relevant period. As set forth below, Plaintiff's claims are insufficient—individually or

1    collectively—to warrant reversal of the ALJ's decision. Plaintiff's claims will be addressed in

2    turn.

3                    **Residual Functional Capacity**

4            The ALJ sufficiently complied with the remand instructions of the Appeals Council and, in

5    doing so, also set forth a RFC supported by substantial evidence. Plaintiff's argument, at least with

6    respect to the gastrointestinal impairments, is that the ALJ ignored and/or mischaracterized

7    evidence favorable to Plaintiff. Pl.'s Mot. (dkt. 19) at 15. Plaintiff argues, therefore, that the ALJ

8    was necessarily unable to follow the directive of the Appeals Council to discuss how the evidence

9    supports the RFC.

10           Although framed as a single argument, Plaintiff essentially presents two distinct claims: (1)

11   that the ALJ failed to follow the remand instructions of the Appeals Council, and (2) that the RFC

12   is unsupported by substantial evidence. As to the first of these claims, although validly asserted,

13   the court finds no error in the ALJ's compliance with the Appeals Council's remand instructions.

14   In fact, Plaintiff appears to concede that the ALJ included a narrative discussion of the medical

15   evidence, as required by the Appeals Council. *Id.* at 13. With respect to Plaintiff's second

16   argument, the court finds that the RFC is supported by substantial evidence. Put simply, Plaintiff's

17   disagreement with the ALJ's evaluation of the relevant evidence and the assessed RFC does not

18   mean that the ALJ's decision is unsupported by substantial evidence. *See Biestek*, 139 S. Ct. at

19   1154 (quoting *Consol. Edison Co.*, 205 U.S. at 229) (defining substantial evidence as "such

20   relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). It was

21   only necessary for the ALJ to *discuss* the medical evidence of record, not necessarily to *accept* it.

22           To that end, the ALJ appears to have engaged in a sufficiently thorough examination of the

23   medical record, and then translated those findings into a RFC which included the limitations

24   finding support in the record. The ALJ did, in fact, analyze much of the evidence that Plaintiff

25   claims was ignored or mischaracterized, but simply rejected certain portions because of its reliance

26   on Plaintiff's subjective complaints (which were largely rejected by the ALJ), the fact that much

27   of the evidence pre-dated Plaintiff's compliance with psychiatric care, as well as the significant

28   gaps in treatment history—all of which are discussed in more detail below. *See* Def.'s Mot. (dkt.

United States District Court
Northern District of California

United States District Court
Northern District of California

23) at 21-24. Plaintiff also argues that the RFC should have included a limitation with respect to Plaintiff's potentially off-task behavior. After a review of the medical records, however, the ALJ simply did not find that the record supported such a limitation. While Plaintiff disagrees with the outcome, the ALJ's detailed assessment of the medical evidence reaches the substantial evidence threshold.[5]

The ALJ's satisfactory assessment of the medical record is particularly evidenced by the limitations included in the RFC, which go beyond the limitations included in the various medical opinions of record. For example, agency consultants Dr. Lateef and Dr. Samplay opined that Plaintiff retained the ability to perform the full range of *medium* work, without any further restrictions. *See* AR at 313-24, 367-68. Acknowledging that Plaintiff's "combination of IBS and visceral hypersensitivity syndrome" came with certain attendant limitations, however, the ALJ instead limited Plaintiff to work at the *light* exertional level—with additional postural limitations. *Id.* at 33. As such, it is evident that the ALJ formulated an RFC with the limitations which, after careful consideration of the medical evidence, found support in the record. At its core, Plaintiff's argument simply amounts to a request that this court reweigh the evidence. *See Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (reiterating that federal courts "are not triers of facts" and that "[w]here, as here, the ALJ has made specific findings . . . and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision").

As to the mental impairments, Plaintiff contends that the ALJ failed to account for certain "concrete work restrictions" assessed by medical sources to which the ALJ afforded persuasive weight. *See* Pl.'s Mot. (dkt. 19) at 16. Plaintiff argues that the ALJ's limitation to simple, repetitive tasks does not properly account for the moderate limitations assessed by these medical sources. *Id.* Most notably, Plaintiff relies on the opinions of Dr. Dennis and Dr. Colsky, asserting that both found moderate restrictions in the following areas: carrying out detailed instructions,

---

[5] Even if the ALJ failed to specifically discuss the full extent of the medical evidence of record, this "is of no consequence" as "'[t]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled.'" *Spears v. Berryhill*, 720 F.App'x 358, 360 (9th Cir. 2017) (quoting *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997)).

1    maintaining attention and concentration for extended periods, completing a normal workday and

2    workweek without interruptions from psychologically-based symptoms and perform at a

3    consistent pace without an unreasonable number and length of rest periods, interacting

4    appropriately with the general public, and getting along with coworkers or peers without

5    distracting them or exhibiting behavioral extremes. *Id.* at 17; AR at 315, 333.

6        Plaintiff is correct that a limitation to simple, repetitive tasks is inadequate to account for

7    findings of moderate limitations in the areas noted above. *See, e.g.*, *Macias v. Saul*, No. 1:19-CV-

8    01187-BAM, 2021 WL 856423, at *6 (E.D. Cal. Mar. 8, 2021), *Berenisia Madrigal v. Saul*, No.

9    1:18-CV-01129-SKO, 2020 WL 58289, at *2 (E.D. Cal. Jan. 6, 2020). The problem with

10   Plaintiff's argument, however, is that neither Dr. Dennis nor Dr. Colsky assessed Plaintiff as

11   having "concrete limitations" in these areas. As noted by Defendant, it appears as though Plaintiff

12   has misunderstood the Mental Residual Functional Capacity Assessment completed by both

13   physicians. Def.'s Mot. (dkt. 23) at 27. The first section of the form ("MRFC1") includes various

14   questions which are used to "help determine the individual's ability to perform sustained work

15   activities." AR at 315, 333. These questions cover various areas of functioning, including those

16   noted above—to which both Dr. Dennis and Dr. Colsky noted moderate limitations. *Id.* The form

17   then clarifies, however, that the responses to such questions are not "the actual mental residual

18   functional capacity assessment." *Id.* Instead, "the actual mental residual functional capacity

19   assessment is recorded in the narrative discussion(s)," located below the area where the medical

20   source rates the degree of limitation in response to the above-mentioned questions ("MRFC1"),

21   and "[a]ny other assessment information deemed appropriate can be recorded in the MRFC –

22   Additional Explanation text box." *Id.* As such, the only "concrete limitations" assessed by Dr.

23   Dennis and Dr. Closky are those set forth in the MRFC – Additional Explanation section, in which

24   both sources limited Plaintiff to the performance of "simple, unskilled work tasks, with limited

25   public/social contact." *Id.* at 315-16, 333-34. As correctly explained by Defendant: "[T]he experts

26   found that Plaintiff's 'moderate' limitations in completing a normal workday or work week or

27   performing at a consistent pace without unreasonable length and number of rest periods, as well as

28   maintain regular attendance [ ], were properly accommodated by restricting Plaintiff to simple,

United States District Court
Northern District of California

unskilled work tasks with limited public/social contacts." *See* Def.'s Mot. (dkt. 23) at 28; *see also*

*Nathan v. Colvin*, 551 F.App'x 404, 408 (9th Cir. 2014) ("[P]laintiff argues that the hypothetical

question . . . should have included all of the moderate limitations identified in Section I of the

Mental Residual Functional Capacity Assessment (MRFCA) form. The ALJ, however, did not err

in excluding these limitations . . . Section I of the MRFCA is not an RFC assessment.").[6]

Therefore, by limiting Plaintiff to light work and including an additional limitation for only

occasional interaction with coworkers and the public, the RFC properly accounted for all of the

"concrete limitations" actually assessed by Dr. Dennis and Dr. Closky.

For the reasons discussed, the ALJ complied with the remand instructions of the Appeals

Council and assessed a RFC supported by substantial evidence. While the evidence might—

theoretically—have been evaluated differently, it is not the role of this court to second-guess the

decision of the ALJ when it is supported by substantial evidence.

### Plaintiff's Pain and Symptom Testimony

As to Plaintiff's second claim, the ALJ properly discounted Plaintiff's pain and symptom

testimony by providing specific, clear, and convincing reasons for doing so. When a claimant has

medically documented impairments that "might reasonably produce the symptoms or pain alleged

and there is no evidence of malingering, the ALJ must give 'specific, clear, and convincing

reasons for rejecting' the testimony by identifying 'which testimony [the ALJ] found not credible'

and explaining 'which evidence contradicted that testimony.'" *Laborin v. Berryhill*, 867 F.3d

1151, 1155 (9th Cir. 2017) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 489, 494 (9th Cir.

2015)). In making this determination, the ALJ will examine the entire case record, including the

objective medical evidence; an individual's statements about the intensity, persistence, and

limiting effects of symptoms; statements and other information provided by medical sources and

other persons; and any other relevant evidence in the individual's case record." Social Security

---

[6] *See also Merritt v. Colvin*, 572 F.App'x 468, 470 (9th Cir. 2014) ("[W]e reject [Plaintiff's] argument that the ALJ erred by focusing on Part III of Dr. Peterson's Mental Residual Functional Capacity Assessment ("MRFCA") evaluation, as opposed to Part I. As the magistrate judge correctly concluded, 'the ALJ was not required to consider, let alone adopt, the mental functional limitations checked in Section I of the MRFCA form.'").

United States District Court
Northern District of California

1    Ruling (SSR) 16-3p. But while the ALJ must do more than "offer[] non-specific conclusions that

2    [a claimant's] testimony was inconsistent with [his] medical treatment," an ALJ is not required "to

3    perform a line-by-line exegesis of the claimant's testimony, nor [must ALJs] draft dissertations

4    when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020).

5             Here, the ALJ found that Plaintiff's impairments could reasonably be expected to cause his

6    alleged symptoms. AR at 34. The ALJ found, however, that "the claimant's statements concerning

7    the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with

8    the medical evidence and other evidence in the record . . . ." *Id.* The ALJ provided several

9    legitimate reasons for properly discounting Plaintiff's pain and symptom testimony, including: the

10   objective medical evidence; Plaintiff's inconsistent statements; and, Plaintiff's activities of daily

11   living. AR at 23-37. For the reasons discussed below, the court finds that the rejection of

12   Plaintiff's testimony was proper in that the explanations provided by the ALJ were specific, clear,

13   and convincing.

14             ***Medical Evidence***

15             As for the medical evidence, the ALJ cited to Plaintiff's somewhat unremarkable

16   diagnostic laboratory findings. *Id.* at 34. Although Plaintiff testified relatively extensively about

17   the debilitating effects of his back pain, the imaging of Plaintiff's thoracic and lumbar spines was

18   unremarkable. *Id.* at 1079, 1088-89. Particularly with respect to Plaintiff's gastrointestinal

19   symptoms, the ALJ also found that the record indicated long gaps in treatment, documented far

20   fewer medical appointments and emergency department visits than alleged, and that, generally,

21   Plaintiff's symptoms largely improved with treatment. *Id.* at 35. For example, the ALJ cited a six-

22   month hiatus in treatment. *Id.* at 36. The record suggests various other hiatuses as well, including a

23   period of sixteen months in which Plaintiff apparently received no treatment beyond a few blood

24   tests. *See* Def.'s Mot. (dkt. 23) at 16; *see also* AR at 1562-64, 1588-89. Plaintiff, of course,

25   testified that he stopped going to the emergency department due to COVID-19 and its potential

26   impact on him as an immunocompromised individual. AR at 251-52. The record indicates,

27   however, that Plaintiff stopped attending treatments in July 2019, which is at least six months

28   prior to the first known case of COVID-19 in the United States. *See CDC Museum COVID-19*

United States District Court
Northern District of California

1    *Timeline*, Centers for Disease Control and Prevention (CDC), https://www.cdc.gov/

2    museum/timeline/covid19.html (last visited August 4, 2023). Moreover, despite Plaintiff's

3    representation that he was immunocompromised, he was not diagnosed with any *potentially*

4    immunocompromising condition until his resumption of care following this sixteen-month hiatus.

5    *See* Def.'s Mot. (dkt. 23) at 16; *see also* AR at 1588.

6          The ALJ also found that the record did not support Plaintiff's testimony as to the frequency

7    and amount of medical appointments and emergency department visits. AR at 35. For example,

8    Plaintiff testified that he used to visit the emergency department two to three times per week. *Id.* at

9    256. As the ALJ noted at the administrative hearing, however, the record often lacks support for

10   such a statement. *See id.* at 263 ("I don't see a bunch of ER records September 2018."). Plaintiff

11   also testified that he was having his blood drawn every two weeks (*id.* at 257), but the record

12   indicates that only three such procedures occurred, after which further treatment was "put on

13   hold." *See id.* at 262, 1604-07. These significant gaps in treatment, as well as the frequency and

14   number of medical visits, were specific, clear, and convincing reason for discounting Plaintiff's

15   testimony. In any case, it appears as though Plaintiff's gastrointestinal symptoms improved upon

16   proper compliance with the recommended psychiatric medication and care. *Id.* at 29, 31-32, 36;

17   *see, e.g.*, *id.* at 1116 (notation by Erin McCoy, MD that it is "[i]mperative that [Plaintiff] establish

18   a psychiatrist"), 1110 (notation by Thea Smith, RN that Dr. McCoy found Plaintiff's

19   "uncontrolled anxiety" to "play[] a significant role" in his gastrointestinal problems), 1505

20   (notation by Kirk Andrus, MD that Plaintiff "is feeling a lot better," and that "[h]is number of ER

21   visits has declined [and] his functionality has improved greatly"). This was yet another valid

22   reason for the ALJ to discount Plaintiff's testimony.

23         The ALJ also acknowledged Plaintiff's various mental symptoms, but found that once

24   Plaintiff was properly medicated and under the consistent care of psychiatric professionals, he had

25   relatively normal mental status exams, normal mood and affect, intact memory and concentration,

26   and that his behavior and thought content were normal. AR at 29, 35; *see e.g.*, *id.* at 1562 (notation

27   by Naga Kothapalli, MD that Plaintiff's symptoms were "stabilized with medication"), 1542

28   (notation by Jessie Carado, NP-C that Plaintiff feels "content" and that his anxiety was "[m]ild to

moderate but [he] is able to manage it better"). "Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *see also Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (citations omitted) ("We have long held that, in assessing a claimant's credibility, the ALJ may properly rely on . . . inadequately explained failure[s] to seek treatment or to follow a prescribed course of treatment."). After a thorough review of the record, the ALJ found that Plaintiff's mental symptoms could be effectively controlled with medication and proper compliance with psychiatric care. This was a specific, clear, and convincing reason to reject Plaintiff's testimony in this regard, and the ALJ noted that many of the more severe mental health episodes occurred prior to the time in which Plaintiff was properly medicated and in compliance with the recommended psychiatric care, or in the context of extensive illicit drug use. *See* AR at 29-35.

### *Inconsistent Statements*

Perhaps most significantly, the ALJ discounted Plaintiff's testimony based on its overwhelmingly inconsistent nature. *Id.* at 29-35. As discussed *supra*, the record simply does not support many of Plaintiff's statements regarding the frequency or number of medical visits, nor his reasoning for discontinuing care at various times. The ALJ also cited several other notable inconsistencies in Plaintiff's testimony. For example, Plaintiff indicated at various points that he had unintentionally lost more than one hundred (100) pounds due to his gastrointestinal issues. AR at 291, 1126, 1156. In each instance, however, the ALJ noted that the record did not support such significant weight loss. *See, e.g.*, *id.* at 29 (The claimant reported a 130 to 160 pounds weight loss due to his gastrointestinal problems; however this was not documented in records. The claimant lost around 10 to 15 pounds but he always had a normal body mass index (BMI).”), 30 (“The claimant reported he had lost 160 pounds since his gastrointestinal problems began . . . [T]his was not confirmed by the medical record.”). In fact, the only relevant mention of weight loss was a report by Plaintiff that, during his teenage years, he had *intentionally* lost sixty (60) pounds to help relieve back pain. *Id.* at 31, 1257. Plaintiff also testified, in response to a direct question from the ALJ, that he had never been told to stop using marijuana. *Id.* at 265. The record, however, reflects

1    several instances of medical providers recommending that Plaintiff cease using marijuana. *See,*

2    *e.g.*, *id.* at 814, 970.

3        The ALJ also noted several inconsistencies with respect to Plaintiff's representations about

4    his work history. *Id.* at 35-35. For example, the record reflects that, in September 2018, Plaintiff

5    told a medical source that he was working for a merchandising company, sometimes up to eighty

6    (80) hours per week. *Id.* at 1541. At the hearing, however, Plaintiff denied that he ever performed

7    this work, despite the ALJ's inquiry into how "something so specific" could end up in Plaintiff's

8    medical records. *Id.* at 247 ("So why do you think that ended up in your records? Why something

9    so specific as saying that you were working at a merchandising company and for a specific

10   number of hours, showed up in your medical records?"). Plaintiff later attempted to clarify that

11   statement by testifying that it was his father, who himself receives Social Security disability

12   benefits, that worked for the merchandising company. *Id.* at 248, 265-66.

13       Such inconsistencies appear throughout Plaintiff's interactions with medical providers as

14   well. For example, Plaintiff informed one provider that "he has not been sexually active for 10

15   years," yet tested positive for Chlamydia during the relevant period. *Id.* at 1560, 1607. Plaintiff

16   also requested that a medical provider prescribe Oxycodone, claiming that his gastrologist

17   recommended it. *Id.* at 1517. Plaintiff's gastrologist, however, very clearly provided that

18   "narcotics are to be avoided, not a good treatment for chronic abdominal pain." *Id.* at 1537.

19   Finally, Plaintiff also informed his treating therapist that he was neither currently using, nor had a

20   history of using, illicit drugs. *Id.* at 1254. This stands in stark contrast to the remainder of the

21   record, including the administrative hearing, in which Plaintiff himself indicated frequent drug

22   use. *See, e.g.*, *id.* at 920, 265, 256-67.

23       As the ALJ put succinctly: "The record reflects multiple inconsistencies." *Id.* at 35. These

24   examples provide just a representative sample of this general issue. The ALJ's reliance on such

25   inconsistencies as grounds for discrediting Plaintiff's testimony was proper, because when a

26   claimant is "found to have been less than candid in other aspects of his testimony, that may

27   properly be taken into account in determining whether or not his claim of disabling pain should be

28   believed." *See Fair*, 885 F.2d at 604 n.5. Further, "[w]hen objective medical evidence in the

1    record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as

2    undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in

3    original).

4                    ***Activities of Daily Living***

5          Finally, the ALJ found that Plaintiffs allegations were inconsistent with his activities of

6    daily living. AR at 35. An ALJ may consider "whether the claimant engages in daily activities

7    inconsistent with the alleged symptoms." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir.

8    2007). "Even if the claimant experiences some difficulty or pain, [his] daily activities 'may be

9    grounds for discrediting the claimant's testimony to the extent that they contradict claims of a

10   totally debilitating impairment.'" *Smartt*, 53 F.4th at 499 (quoting *Molina*, 674 F.3d at 1113).

11         The ALJ cited to Plaintiff's ability to "take care of [a] pet cat, prepare his own meals, shop

12   for groceries and get along with family, friends, neighbors or others." AR at 35. The ALJ found

13   that "[t]hese activities require some of the same physical and mental requirements of work,

14   including abilities to concentrate, interact appropriately, lift and carry, stand and walk, and bend

15   and stoop." *Id.* It is not the role of this court to "second-guess" an ALJ's reasonable interpretation

16   of a claimant's testimony. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). So while "the

17   ALJ's interpretation of [Plaintiff's] testimony may not be the only reasonable one . . . it is still a

18   reasonable interpretation and is supported by substantial evidence." *Id.* (finding that the claimant's

19   testimony was undermined by her ability to care for children, cook, clean, and shop); *see also*

20   *Smartt*, 53 F.4th at 499-500 (discounting claimant's testimony based on her ability, even in short

21   increments, to cook, clean, care for her daughter, and grocery shop). The ALJ's reliance on such

22   activities, therefore, was sufficiently specific, clear, and convincing.

23         For the reasons discussed, the ALJ's explanations for the rejection of Plaintiff's pain and

24   symptom testimony were specific, clear, and convincing. The objective medical evidence, the

25   inconsistent nature of Plaintiff's statements, and Plaintiff's activities of daily living were all

26   sufficient grounds for such a finding. The ALJ did not err in this regard.

27                              **CONCLUSION**

28         Accordingly, for the reasons stated herein, Defendant's Cross-Motion for Summary

*United States District Court*
*Northern District of California*

Judgment (dkt. 23) is **GRANTED**, and Plaintiff's Motion for Summary Judgment (dkt. 19) is **DENIED**.

      **IT IS SO ORDERED.**

Dated: August 24, 2023

_____
ROBERT M. ILLMAN
United States Magistrate Judge

16